Minich *v.* Sharon City, Appellant.

Argued September 27, 1950.   Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument   refused January 17, 1951.

*Nathan Routman,* City Solicitor, for appellant.

*M. L. McBride, Jr.,* with him *M. L. McBride* and *McBride & McBride,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1951:

Plaintiffs are residents of the Boroughs of Mercer, Greenville and Grove City, Mercer County, respectively, but are employed by the Westinghouse Electric Corporation at its plant in the City of Sharon in that county. They have brought a bill in equity against the City of Sharon and the Westinghouse Electric Corporation seeking an injunction against their collecting from plaintiffs a wage tax imposed by the city so far as it is in excess of the rate of 5 mills on each dollar of wages earned by them at the Westinghouse plant. The court below—in our opinion erroneously—issued the injunction.

On June 27, 1949 the Board of School Directors of the School District of the City of Sharon adopted a resolution imposing a tax of 5 mills per dollar of income earned by residents of the School District for the period January 1, 1950 to July 2, 1950. On January 10, 1950 the Council of the City of Sharon enacted an ordinance assessing a tax of 10 mills per dollar of income earned by residents of the city after January 1, 1950, and also of 10 mills per dollar on income earned after that date by non-residents of the city for work done or services performed in the city. Under this ordinance the City of Sharon is attempting to collect the 10 mills tax from such non-residents working in the city as are not subject to an income or wage tax at their places of residence, but only a 5 mills tax from residents of the city because of the latter being compelled to pay also the 5 mills tax to the School District of the City of Sharon, which School District is coter-

minous with the city. Plaintiffs allege that this works an illegal discrimination in favor of residents of the city as against such non-residents employed there, being in violation of Article IX, section 1 of the Constitution of the Commonwealth which provides that "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax." They assert, therefore, that they should not be required to pay a tax of more than 5 mills, the same as is paid by residents of the city.

The Act of June 25, 1947, P.L. 1145, gave authority to certain political subdivisions to levy such taxes on persons, occupations and subjects within the limits of such political subdivisions as they should determine, provided only that such taxes should not be imposed on any person, occupation or subject, which then was or thereafter became subject to a State tax. It is under the authority of that Act that these taxes were imposed by the City of Sharon and by the School District of the City of Sharon. Section 5 of the Act provides that "Payment of any tax on . . . wages . . . to a political subdivision by residents thereof pursuant to an ordinance or resolution passed or adopted under the authority of this act shall be credited to and allowed as a deduction from the liability of such persons for any other like tax . . . on . . . wages . . . imposed by any other political subdivision of this Commonwealth under the authority of this act." This section of the Act was construed by the Superior Court in *Glen Alden Coal Company v. Thomas,* 165 Pa. Superior Ct. 199, 67 A. 2d 754, as meaning that a taxpayer may credit any wage tax paid by him to the borough or school district of his residence against any tax levied by a municipality of which he is not a resident but in which his wages are earned, but may not assert such a credit against a tax levied by another political subdivision of which he is also a resident. As applied to the present situation, therefore, it

is clear that the City of Sharon must allow a credit as against its 10 mills tax to any non-resident paying a tax on the same wages to another political subdivision of which the taxpayer is a resident. As far as plaintiffs in the present proceedings are concerned, however, it is not claimed that they are taxed on their wages earned in the City of Sharon by the respective political subdivisions of which they are residents, and, therefore, they have not shown any right to the allowance of a credit but must pay the full 10 mills tax imposed by the city's ordinance.

Allowing a credit against the payment of a tax for taxes paid to some other governmental authority is not a violation of the constitutional requirement of uniformity. In *Florida v. Mellon, Secretary of the Treasury*, 273 U. S. 12, it was held by the Supreme Court of the United States that a provision in the Revenue Act of 1926 allowing a credit on the tax thereby imposed (up to 80% thereof) for the amount of any estate or inheritance taxes paid to any State was constitutional and valid. In that case the State of Florida contended that under the constitution of Florida no tax on inheritances could be levied by the State or under its authority and that the Federal tax was therefore not uniform because the citizens of other States profited by the allowance of the credit while Florida obtained no benefit therefrom. The Court rejected that contention. In *Steward Machine Company v. Davis, Collector of Internal Revenue*, 301 U. S. 548, it was argued that the Social Security Act of 1935 was invalid as discriminatory because it allowed to the taxpayer credit against the federal tax (up to 90% thereof) for what he had contributed during the tax year under any state unemployment law. The Supreme Court of the United States again held that the allowance of such a credit did not involve any illegal departure from the requirement of uniformity. The present federal

income tax law, as we all know, allows credit deductions from the taxable income base for taxes paid by the taxpayer under local laws, but no one has successfully contended that these credit allowances, varying as they necessarily do among different individuals and among different States, involve a violation of Article I, section 8 of the Constitution of the United States that "all duties, imposts and excises shall be uniform throughout the United States." In *Erie v. Griswold*, 5 Pa. Superior Ct. 132, it was held that an act authorizing a city, which imposed the cost of paving streets in whole or in part upon abutting property owners, to allow the latter an abatement of their general city taxes on the same property equivalent to a portion of the assessment for the paving improvement, did not offend against the constitutional provision of the Commonwealth (Article IX, section 1) requiring uniformity of taxation. The decision of the Superior Court in that case was affirmed, per curiam, on the opinion of that Court, in 184 Pa. 435, 39 A. 231. In *Franklin v. Hancock*, 18 Pa. Superior Ct. 398, it was similarly held that the provision of an act that a property owner should be reimbursed for paving assessments by rebates out of road taxes did not render the act unconstitutional. That decision was also affirmed, per curiam, on the opinion of the Superior Court, in 204 Pa. 110, 53 A. 644. The credits provided for in the Act of June 25, 1947, P.L. 1145, are all the more legally justified because the tax for which the credit is allowed is on the same subject as the tax against which the allowance is made.

It has already been stated that the Act of 1947 allowed credits to non-residents of the political subdivision imposing the tax but made no such provision for the benefit of taxpayers who were residents of a political subdivision coterminous with the political subdivision imposing the tax and were therefore residents

of both. This situation was remedied by the amendatory Act of May 9, 1949, P.L. 898, which added to the Act of 1947 a subsection providing that no taxes should be levied by any political subdivision exceeding a rate of 1% on wages, and that "If at any time two political subdivisions shall impose any one of the above taxes [inter alia, on wages] on the same person, subject, business, transaction or privilege, located within both such political subdivisions, during the same year or part of the same year, under the authority of this act, then the tax levied by a political subdivision under the authority of this act shall, during the time such duplication of the tax exists, except as hereinafter otherwise provided, be one-half of the rate, as above limited, and such one-half rate shall become effective by virtue of the requirements of this act from the day such duplication becomes effective without any action on the part of the political subdivision imposing the tax under the authority of this act. It is the intent and purpose of this provision to limit rates of taxes referred to in this subsection so that the entire burden of one tax on a person, subject, business, transaction or privilege shall not exceed the limitations prescribed in this subsection: Provided, however, That any two political subdivisions which impose any one of the above taxes on the same person, subject, business, transaction or privilege during the same year or part of the same year may agree among themselves that, instead of limiting their respective rates to one-half of the maximum rate herein provided, they will impose respectively different rates, the total of which shall not exceed the maximum rate as above permitted." Thus, carrying out the same intention as shown in section 5 of the Act of 1947, this amendment provides that where the person or the subject of taxation is located within both of two political subdivisions—as in the present instance in the case of residents of the City of

Sharon and of the School District of the City of Sharon —there must not be a duplication or aggregation of taxes exceeding the permissible limit, but consideration must be given by the one political subdivision to the tax imposed by the other. Here, therefore, the tax imposed by the School District of the City of Sharon being at the rate of 5 mills, what may be regarded as a credit to that amount must be allowed on the 10 mills tax imposed by the City of Sharon. While the language in the 1949 Act is not cast in the same form as that in section 5 of the Act of 1947, in that the word "credit" is not employed, in practice the same result is accomplished in the case of a taxpayer resident in both of two coterminous political subdivisions as in the case of one resident in one political subdivision and employed in another. If the residents of the School District of the City of Sharon were, instead, residents of the Borough of Mercer, Greenville or Grove City, as these plaintiffs are, and they were there taxed 5 mills on the wages earned by them in the City of Sharon, they would be entitled to the same allowance in that amount as that now credited them by reason of the tax imposed upon them by the School District of the City of Sharon. There is therefore no such classification between residents and non-residents of the City of Sharon as plaintiffs envisage.

The provision in the Act of 1949 that the tax imposed by a political subdivision on a subject located both in it and another political subdivision shall be reduced to one-half of the rate is obviously designed merely to secure for those taxpayers *who are residents of both such political subdivisions* a proper allowance of credit; it does not mean that the tax so imposed is automatically reduced to one-half as against persons *who are residents of some other political subdivision.*

The order of the court below is reversed, the City of Sharon, however, to pay the costs.