**[J-25-2025] [MO: Wecht, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, JEFFERY B. FRANCOEUR, KYLE C. PALMIERI, AND SCOTT WILSON, | : : : : : : : | No. 20 WAP 2024 <br><br> Appeal from the Order of the Commonwealth Court entered January 10, 2024, at No. 1150 CD 2022, Affirming the Order of the Court of Common Pleas of Allegheny County entered |
| Appellees | : : | September 21, 2022, at No. GD-19-015542. |
| | : | |
| v. | : : : | ARGUED:  April 10, 2025 |
| | : : | |
| CITY OF PITTSBURGH, | : : | |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE MUNDY**                                    **DECIDED: SEPTEMBER 25, 2025**

As the majority develops, the City of Pittsburgh defends the Arena Tax because it is set at three percent, while city residents who perform at one of the arenas also pay a total of three percent when their one-percent earned income tax (EIT) – from which nonresident performers are exempt – is added to the two-percent school tax.  Viewed from that perspective, it is similar to the tax this Court upheld in *Minich v. City of Sharon*, 77 A.2d 347 (Pa. 1951), in which residents and nonresidents both paid ten mills on their income:  residents paid a five-mill EIT plus a five-mill school tax, while nonresidents paid a ten-mill EIT and no school tax.  Pittsburgh points out that that equalized the overall tax burden, with such equalization arising because the City of Sharon nominally imposed a ten-mill EIT on everyone but allowed city residents to claim a credit against their EIT

liability in the amount of the five mills they paid to the school district. *See* Brief for Appellant, at 16-20.

If that was how Pittsburgh's tax scheme worked, Pittsburgh would have a stronger argument. Then resident performers and nonresident performers would each pay a three-percent city tax on the income they obtain from performances at one of the arenas, and resident performers would take a two-percent credit for the taxes they pay to the Pittsburgh Public School District. Then, as well, nonresident performers could also take a credit for any taxes they paid to other political subdivisions, as was true in *Minich*. And that is precisely where Pittsburgh's comparison to *Minich* falls apart because, as Justice Donohue observes, nonresident performers cannot do this, *see* Concurring Op. at 5-6 (Donohue, J.), whereas the nonresident workers in *Minich* who paid taxes to other subdivisions could. *See* Majority Op. at 9.

The Legislature enjoys "wide discretion" in drawing classification for tax purposes. *Commonwealth v. Life Assurance Co. of Pa.*, 214 A.2d 209, 214 (Pa. 1965). Although a classification may appear discriminatory on its face, it will nonetheless be deemed constitutionally reasonable so long as the reviewing court can conceive of "any state of facts" to sustain it. *Harrisburg Sch. Dist. v. Zogby*, 828 A.2d 1079, 1089 (Pa. 2003). But there are limits: the Uniformity Clause does not permit inferior treatment of taxpayers based solely on nonresident status. *Accord* Majority Op. at 13 (discussing *Danyluk v. Bethlehem Steel Co.*, 178 A.2d 609 (Pa. 1962)); *see Columbia Gas Transmission Corp. v. Commonwealth*, 360 A.2d 592, 595 (Pa. 1976) ("Classifications based solely on place of incorporation, without any further justification, cannot stand constitutional scrutiny."). *But cf. Leanoard v. Thornburgh*, 489 A.2d 1349, 1352-53 (Pa. 1985) (upholding a lower wage tax cap on nonresidents of Philadelphia than on residents, given that residents vote locally and use municipal services more intensely than nonresidents). Thus, for example,

if residents were assessed a tax of one percent on earned income, and nonresidents were assessed a tax of one percent plus $1.00, that would presumably violate uniformity even though Pittsburgh could argue, as it does here, that a variance of only $1.00 achieves the "rough uniformity" with which the Clause is concerned.  *See* Brief for Appellant at 5.  The point is not the variance but the arbitrariness.

I join the majority opinion in full.