**[J-25-2025] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| NATIONAL HOCKEY LEAGUE PLAYERS ASSOCIATION, MAJOR LEAGUE BASEBALL PLAYERS ASSOCIATION, NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, JEFFERY B. FRANCOEUR, KYLE C. PALMIERI, AND SCOTT WILSON, | : : : : : : : | No. 20 WAP 2024

Appeal from the Order of the Commonwealth Court entered January 10, 2024, at No. 1150 CD 2022, Affirming the Order of the Court of Common Pleas of Allegheny County entered |
| Appellees | : : : | September 21, 2022, at No. GD-19-015542 |
| | : | |
| v. | : : : | ARGUED:  April 10, 2025 |
| | : : | |
| CITY OF PITTSBURGH, | : : | |
| Appellant | : | |

**CONCURRING OPINION**

**JUSTICE DONOHUE**            **DECIDED: SEPTEMBER 25, 2025**

I agree with the Majority that the City of Pittsburgh's ("City") facility fee violates the Uniformity Clause.[1]  However, I arrive at that conclusion for different reasons.

The facility fee imposes a three percent tax on income earned by "each nonresident who uses a publicly funded facility to engage in an athletic event or otherwise render a performance for which a such nonresident receives remuneration." PITTSBURGH CODE OF ORDINANCES § 271.02.  City residents, however, are not subject to the facility fee, instead paying a one percent earned income tax and a two percent school district

---

[1] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, § 1.

tax.[2] The plaintiffs in this case, a collection of active and retired non-resident athletes and their respective players' unions (collectively, "the Athletes"), argue that the facility fee violates the Uniformity Clause because it discriminates between resident and non-resident athletes, with non-resident athletes paying the three percent facility fee while resident athletes pay only a one percent earned income tax. It is the City's position that the facility fee effectively balances the tax burden of resident and non-resident athletes, as resident athletes also pay a two percent school district tax, resulting in an effective tax rate of three percent.

While I arrive at the opposite conclusion than President Judge Cohn Jubelirer in her dissenting opinion in the Commonwealth Court, I do agree with her observation that "[t]he Uniformity Clause … is primarily concerned about equality of tax burden among members of a class." *Nat'l Hockey League Players Ass'n v. City of Pittsburgh*, 308 A.3d 318, 328 (Pa. Commw. 2024) (Cohn Jubelirer, P.J., dissenting). This understanding aligns with our jurisprudence explaining that the Uniformity Clause prohibits tax schemes that have a "discriminatory **result**." *Mount Airy #1, LLC v. Pa. Dep't of Revenue,* 154 A.3d 268, 273 (Pa. 2016) (quoting *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1210, 1211 (Pa. 2009)); *see also Nextel Commc'ns of Mid-Atl., Inc. v. Commonwealth, Dep't of Revenue*, 171 A.3d 682, 698 (Pa. 2017) ("[W]e do not look at [a tax law's] language in a vacuum; rather, we also examine how it functions when applied to establish a [taxpayer's] net income tax liability."); *Fox's Appeal*, 4 A. 149, 153 (Pa. 1886) ("[The Uniformity Clause] was intended to and does sweep away forever the power of the legislature to impose unequal burdens upon the people under the form of taxation.").

---

[2] The Public School Code of 1949 prohibits the imposition of school district taxes on nonresidents of a school district. *See* 24 P.S. § 6-652.1(a)(4).

Here, resident and non-resident athletes both pay a total of three percent on their income attributable to their work in one of the City's sports venues. As has been well-established, the taxing scheme at issue provides that all three percent of the non-residents' tax goes to the City's general fund, whereas only one percent of the City residents' tax goes to the general fund with the remaining two percent going to the local school district. Pursuant to my understanding of our Uniformity Clause jurisprudence, the effect on the taxpayer is what should control our analysis, not the taxing entity's intended purpose for the taxed funds. For that reason, I agree with President Judge Cohn Jubelirer that "the ultimate **destination** of the tax revenue" should not change the result. *Nat'l Hockey League Players Ass'n*, 308 A.3d at 328 (Cohn Jubelirer, P.J., dissenting) (emphasis in original). However, the mere fact that the City's taxing scheme nets three percent from both residents and non-residents alike does not automatically equalize the burden for purposes of tax uniformity.

Other municipalities, ostensibly including those where the non-resident athletes reside, may also subject their residents' income generated in the City to their own taxes. Under state law, Pennsylvania residents who live in one municipality but work in another can claim a credit against taxes payable to their place of work for taxes paid to their place of residence. 53 P.S. § 6924.317(b)-(c).[3] This is also true of out-of-state residents that

---

[3] The relevant statutory language is as follows:

> (b) Payment of any tax on salaries, wages, commissions, other compensation or on net profits of business, professions or other activities to a political subdivision by residents thereof pursuant to an ordinance or resolution passed or adopted under the authority of this act shall be credited to and allowed as a deduction from the liability of such persons for any other like tax respectively on salaries, wages, commissions, other compensation or on net profits of businesses, professions or other activities imposed by any other political subdivision of this Commonwealth under the authority of this act.

(continued…)

earn income in Pennsylvania, so long as their home municipality permits reciprocal credits. 53 P.S. § 6924.317(d).[4] Our tax laws, including those of the Local Tax Enabling Act ("LTEA"), are intended to preserve uniform taxation in this Commonwealth for the "same class" of taxpayers. PA. CONST. art. VIII, § 1. In pursuit of that goal, these statutorily-mandated credits are intended to be utilized so that non-residents of some other municipality—either out of state or within our Commonwealth—may not be double

(c) Payment of any tax on income to any political subdivision by residents thereof pursuant to an ordinance or resolution passed or adopted under the authority of this act shall, to the extent that such income includes salaries, wages, commissions, other compensation or net profits of businesses, professions or other activities, but in such proportion as hereinafter set forth, be credited to and allowed as a deduction from the liability of such persons for any other tax on salaries, wages, commissions, other compensation or on net profits of businesses, professions, or other activities imposed by any other political subdivision of this Commonwealth under the authority of this chapter.

53 P.S. § 6924.317(b)-(c).

[4] The statute provides as follows:

(d) Payment of any tax on income to any state or to any political subdivision thereof by residents thereof, pursuant to any State or local law, shall, to the extent that such income includes salaries, wages, commissions, or other compensation or net profits of businesses, professions or other activities but in such proportions as hereinafter set forth, be credited to and allowed as a deduction from the liability of such person for any other tax on salaries, wages, commissions, other compensation or net profits of businesses, professions or other activities imposed by any political subdivision of this Commonwealth under the authority of this act if residents of the political subdivision in Pennsylvania receive credits and deductions of a similar kind to a like degree from the tax on income imposed by the other state or political subdivision thereof.

53 P.S. § 6924.317(d).

taxed on the same income, resulting in a disparate tax burden. Pursuant to statute, this credit should be available to all non-residents of a particular municipality, including non-residents of the City. According to the record before us, however, the City effectively forecloses the possibility of non-resident athletes from receiving a tax credit. *See* Stipulations of Fact ¶ 7; City of Pittsburgh Non-Resident Sports Facility Usage Fee Regulations, § 302(c) (instructing taxpayers subject to the facility fee to not report it "in the local tax box on a W-2 form," where it could be credited against other local taxes paid on the same income). To preclude the ability of these non-residents to obtain a credit on this income is to preclude the goal of uniform taxation. Even if the tax itself is applied neutrally by saddling both residents and non-residents with a tax burden of three percent, the City's decision to foreclose non-residents from receiving a credit prevents the overall taxing scheme from operating neutrally, as it has the disparate effect of forcing only non-resident athletes to be subject to double taxation. *See Minich v. City of Sharon*, 77 A.2d 347, 350 (Pa. 1951) (noting that our established Uniformity Clause principles are satisfied when the taxing scheme and allowance of tax credits are neutral).

I agree with the Majority that our decision in *Minich* was not, as the City argues, "some sort of watershed Uniformity Clause decision" that completely controls our analysis in the instant matter. Majority Op. at 10. However, unlike the Majority, I still find its rationale compelling to the extent that it stands for the proposition that the intersection of local taxing schemes and the system of tax credits work in concert to further the mandate of the Uniformity Clause. *Minich* 77 A.2d at 350. Where, as here, the tax credit is foreclosed to a group of non-residents, there is a clear indication that the tax scheme at issue is not neutral, thereby undermining the well-established principles relied upon in *Minich*. Thus, I would hold that the City's denial of a credit to non-resident athletes is

sufficient to demonstrate that the facility fee contravenes the Uniformity Clause principles upheld in *Minich*.

I also distance myself from the Majority's discussion and elevation of this Court's dicta in *Danyluk v. Bethlehem Steel Co.*, 178 A.2d 609 (Pa. 1962) to precedential status. The Majority's analysis relies on *Danyluk* in support of the proposition that a municipality cannot defend its taxing scheme under the Uniformity Clause by relying on separate classes of taxation (e.g., school district, income, etc.). Aside from the Majority's reliance on dicta from that case in support of this proposition, I also disagree with the proposition that a taxing authority cannot rely upon on separate classes of taxation to achieve uniform taxation.

First of all, I see no reason to discuss *Danyluk* in the context of this case. In *Danyluk*, the City of Johnstown imposed a ten-dollar annual "occupational tax" on non-residents who worked in the city. Johnstown residents were not subject to the occupational tax but paid a separate ten-dollar per capita tax. Non-residents challenged the constitutionality of the occupational tax under the Uniformity Clause. We held that the occupational tax was truly a per capita tax, which "can be imposed only upon residents of the particular political subdivision." *Danyluk*, 178 A.2d at 610. Because the City of Johnstown's occupational tax applied to non-residents, we held that the tax was impermissible under the law. Although that conclusion was dispositive, the *Danyluk* Court went on to opine, in dicta,[5] that the occupational tax would also be unconstitutional under the Uniformity Clause because "[r]esidence cannot be made the basis of discrimination in taxation of persons engaged in the same occupation or profession." *Id*. Although the

---

[5] The Majority views the *Danyluk* Court's uniformity discussion as debatably dicta, *see* Majority Op. at 12, but we have suggested in at least one prior decision that this portion of *Danyluk* was dicta. *See Leonard v. Thornburgh*, 489 A.2d 1349, 1352 (Pa. 1985) (describing *Danyluk*'s discussion that an occupation tax against only non-residents would violate our Uniformity Clause was dicta).

Majority embraces this portion of *Danyluk*, explaining that "it would be a mistake to write *Danyluk* out of our Uniformity Clause jurisprudence entirely[,]" Majority Op. at 13, I see no reason to elevate that dicta, particularly when it seems to contradict our Uniformity Clause jurisprudence that focuses on the actual effect of the tax rather than the nature of the tax itself. As discussed earlier, our case law directs that we focus our analysis on the tax burden when presented with a Uniformity Clause challenge, which means we need not look to the eventual destination of the tax money. Pursuant to a similar logic, the breakdown as to the type of taxes at issue in a given challenge is also irrelevant so long as the burden in a single instance of taxation is equal and otherwise neutrally applied. In other words, we care that the taxes are uniform in effect, not in form.

Because the City precludes non-resident athletes from receiving a tax credit when they earn income at one of the City's sports venues, I find the City's facility fee to be unconstitutional. Accordingly, I concur with the Majority's result, albeit for a different reason.

Chief Justice Todd joins this concurring opinion.