[L. A. No. 25582. In Bank. Dec. 23, 1959.]

CITY OF POMONA, Respondent, v. STATE BOARD OF EQUALIZATION et al., Defendants; CITY OF MONT-CLAIR et al., Appellants.

Henry M. Busch, City Attorney, Burke, Williams & Sorensen, Royal M. Sorensen, Albert E. Weller, County Counsel, and J. B. Lawrence, Deputy County Counsel, for Appellants.

Robert Anderson, City Attorney (Berkeley), John H. Lauten, City Attorney (Fresno), Jean F. DuPaul, City Attorney (San Diego), Roger Arnebergh, City Attorney (Los Angeles), and James A. Doherty, Assistant City Attorney, as Amici Curiae on behalf of Appellants.

Arlo E. Rickett, Jr., City Attorney, O'Melveny & Myers, Pierce Works, Howard J. Deards and William D. Moore for Respondent.

SPENCE, J.—This is an appeal from a judgment entered in a mandamus proceeding, which judgment directed the apportionment between contesting political subdivisions of certain retail sales tax revenue.

The city of Pomona, in Los Angeles County, and the city of Montclair, in San Bernardino County, adjoin. Two buildings, which constitute a retail sales outlet of Sears, Roebuck and Company, are bisected by the line which divides the two cities and the two counties.

In 1956 both cities and San Bernardino County adopted ordinances imposing local sales taxes, pursuant to the Bradley-Burns Uniform Local Sales and Use Tax Law (Rev. & Tax.

Code, pt. 1.5, §§ 7200-7207). The rates of the Pomona and San Bernardino County taxes were 1 per cent and the rate of the Montclair tax was .9 per cent. Since the Bradley-Burns Act provides credit on a county tax for sales tax due to a city within the county (Rev. & Tax. Code, § 7202, subd. (h)), the tax payable by retailers taxable by Montclair is distributable .9 per cent to Montclair and .1 per cent to San Bernardino County. As provided in the Bradley-Burns Act, both cities and San Bernardino County have contracted with the State Board of Equalization "to perform all functions incident to the administration or operation" of their respective sales and use taxes (Rev. & Tax. Code, § 7202, subds. (d), (h)(3)).

Pursuant to those contracts, the State Board of Equalization collected $32,375.16 from the above-mentioned Sears outlet for the third quarter of 1956. The sum represents 1 per cent of Sears' taxable sales receipts from that place of business. Subsequently, Pomona brought the present action for a writ of mandate to compel the board to pay to it the entire sum. Since parts of the Sears buildings and land were located in Montclair, the latter city and San Bernardino County contended that Pomona should not receive the whole sum, but that there should be an apportionment among the two cities and the county.

The Sears' retail outlet consists of two buildings, the first of which is known as the main store and includes sales floor area, storage area, offices and administration area, and other facilities. The second building is known as a service building and contains a service station, sales floor area, warehouse, and other facilities. The two buildings are located in a large, integrated shopping center, known as Pomona Valley Shopping Center. Sears, as such, does not own any of the land or buildings within the shopping center. Some of the land within the shopping center and the two buildings occupied by Sears are owned by Cecil P. Bronston as successor cotrustee of the Supplemental Savings and Retirement Plan of Sears, Roebuck and Company Employees. The remaining portions of the shopping center are owned by Pomona Valley Center, Inc., either in fee or through option to purchase. The land owned by Bronston is subject to an agreement with Pomona Valley Center, Inc., requiring that certain areas be maintained for parking, and be subject to use by the customers of any of the establishments in the shopping center, and that certain ratios

between sales floor area and parking area be maintained. Parkways and walkways are subject to a nonexclusive easement in favor of Pomona Valley Center, Inc., its tenants and their customers. Bronston was granted certain corresponding rights in various additional areas of the shopping center, including the right to have his lessees and their customers use parking area in other parts of the shopping center. All of Bronston's rights have been leased to Sears for a term of years.

After trial of the mandamus proceeding, the trial court filed an order of submission and an order directing judgment, and also a memorandum opinion. The opinion reasoned that applicable statutes do not expressly cover the situation of a unitary place of business located astride the boundary line dividing different taxing localities, and that since the Board of Equalization under its rule-making power had passed no administrative rule to the contrary, an apportionment seemed proper. The opinion then concluded that a just and reasonable method of apportionment was to divide the receipts on the basis of the percentage of "the buildings and land used by Sears Roebuck and Company at the location alleged in the petition" falling on either side of the boundary line. Applying that formula, the memorandum opinion declared that Pomona was entitled to 45.70 per cent of the tax receipts and that the remaining 54.30 per cent belonged 9/10 to Montclair and 1/10 to San Bernardino County.

Thereafter, pursuant to a motion made by Pomona, the order of submission and order directing judgment were vacated, the trial was reopened and additional evidence was taken. On August 31, 1958, the court entered its judgment determining that Pomona was entitled to 87.2848 per cent of the tax receipts, Montclair to 9/10 of 12.7152 per cent, and San Bernardino County to 1/10 of 12.7152 per cent.

This distribution ordered in the judgment is based upon a method of apportionment differing from that previously announced by the court in its earlier memorandum. The judgment's apportionment is made on the basis of physical location of the various sales departments where the displaying of merchandise and negotiation of individual sales occurred. Use of this method was possible because Sears' accounting system separately recorded the sales receipts of each of its various sales departments, and because each sales department occupied, during the third quarter of 1956, a certain and delimitable physical location for display of its merchandise and transaction of sales. When the whole of a particular sales depart-

ment was located on one side of the boundary line, the whole of the receipts from that department's sales was attributed to the jurisdiction in which the department was located. During that quarter, departments located entirely within Pomona produced 82.7155 per cent of the sales receipts of the store, and departments located entirely within Montclair produced 6.6112 per cent of the sales receipts of the store. Of the sales departments in the two buildings, only the lamp department, the garden shop department and the furniture department were bisected by the boundary line. The court apportioned the receipts of these three departments on the basis of the percentage of total sales floor area of each such department (area in which merchandise is displayed and where customers and sales personnel customarily stand in negotiating the sale of merchandise) falling on either side of the line. The apportionment formula on which the judgment is based did not take into account such area as that used for stock storage, employees' cafeteria, walkways, or customer parking facilities.

The question before this court is whether the apportionment ordered by the trial court's judgment constitutes a proper application of the Bradley-Burns Act to the unusual facts of this case.

The Bradley-Burns Act provides that "the sales tax portion of any sales and use tax ordinance adopted under this part shall be imposed *for the privilege of selling tangible personal property at retail. . . .*" (Rev. & Tax. Code, § 7202 [emphasis added.]) The emphasized language is the same as that used in the section imposing the state sales tax (Rev. & Tax. Code, § 6051). As pointed out in the trial court's original memorandum, the state sales tax has been judicially construed as "not a tax on the sale or because of the sale but . . . an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales." (*Livingston Rock & Gravel Co.* v. *De Salvo,* 136 Cal.App.2d 156, 160 [288 P.2d 317].)

The rate and measure of the local sales taxes authorized by the Bradley-Burns Act are "one percent (1%) of the gross receipts of the retailer from the sale of all tangible personal property sold by him at retail in the county." (Rev. & Tax. Code, § 7202, subd. (a). Subdivision (h)(1) of § 7202, which pertains to city sales taxes, is similar except that it reads "1 percent or less" rather than "one percent"; and further reads, "in the city" rather than "in the county.") The

Bradley-Burns Act provides additionally that "all retail sales for the purpose of this part shall be presumed to have been consummated at the place of business of the retailer" except for certain situations in which the item sold is destined to go out of the state. (Rev. & Tax Code, § 7205.)

In the agreements which the cities and county entered into with the Board of Equalization for the board's administration of the local sales taxes, the cities and county agreed that "the Board shall prescribe and adopt such rules and regulations as in its judgment are necessary or desirable for the administration and operation of the . . . ordinance and the distribution of the local taxes collected thereunder." Regulation 2202 of the Board of Equalization provides in part as follows:

"For the purposes of the Bradley-Burns Uniform Local Sales and Use Tax Law, all retail sales occur at the place of business of the retailer. . . .

"It is immaterial that title to the tangible personal property sold passes to the purchaser at a place outside of the local taxing jurisdiction in which the retailer's place of business is located, or that the property sold is never within the local taxing jurisdiction in which the retailer's place of business is located.

" . . . . . . . . . . . .

"If a seller has more than one location for which seller's permits are required, and if two or more of such locations participate in the sale, the sale occurs at the place of business where the principal negotiations are carried on. If this place is the place where the order is taken, it is immaterial that the order must be forwarded for acceptance, approval of credit, shipment, or billing. For the purposes of this rule, an employee's activities will be attributed to the place of business out of which he works." (Tit. 18, Cal. Admin. Code.) However, no Board of Equalization regulation deals expressly with the situation of a single place of business located within two taxing jurisdictions, for which but one seller's permit is required (see Rev. & Tax. Code, §§ 6066-6071; Board of Equalization Regulation 2099, tit. 18, Cal. Admin. Code).

Montclair and San Bernardino County contend that the apportionment formula embodied in the judgment is erroneous. They argue that the correct formula for apportionment is the percentage of physical plant located within each city rather than the location of only sales departments. They rely heavily on the fact that the activity being taxed, the carrying

on of a retail business, includes more than displaying merchandise and negotiating particular sales; and they note that the retail business in the instant case uses and needs a considerable amount of space for customer parking and stock storage. They furthermore point out that the Bradley-Burns Act and a board regulation locate sales at "the place of business." (Rev. & Tax. Code, § 7205, *supra*; Board of Equalization Regulation 2202, tit. 18, Cal. Admin. Code, *supra*.) It follows, they assert, that the tax collected on sales receipts should be allocated to the entire place of business rather than to any specific portion or portions of the place of business.

Pomona contends, however, that the trial court's apportionment on the basis of location of sales departments is a fair and reasonable application of the statutes and regulations. Pomona emphasizes the fact that the measure of the local sales taxes is gross receipts from goods a retailer has sold at retail "in the city" (or "in the county" for a county tax). (Rev. & Tax. Code, § 7202, subds. (a), (h)(1), *supra*.) This implies, Pomona argues, that the most reasonable test is one based upon the place where the sales were actually made. Pomona notes that the parties agree that all the sales were made "at the place of business," and further notes that section 7205 says nothing expressly about spreading sales evenly over the whole physical plant. Pomona adds that even if the presumption of section 7205 is that the sales occurred evenly over the entire place of business, such a presumption is rebuttable by evidence (such as Sears' records) showing where the sales actually occurred. (Code Civ. Proc., §§ 1961, 1962, subd. 7.) This is so, Pomona argues, even though the board's regulation 2202, quoted above, substituted the words "occurs at the place of business" for the statutory language "shall be presumed to have been consummated at the place of business," because the board was without authority to change a legislatively created rebuttable presumption into a conclusive one.

Under the circumstances presented by the record, we are of the opinion that the trial court's apportionment of the tax revenue was proper under the existing statutes and regulations. While it may be freely conceded that there is nothing found in such statutes or regulations to indicate that the Legislature or the board had in mind the unusual circumstances shown by the evidence, there are certain provisions therein which appear to be helpful in the determination of the problem before us.

Since portions of the principal sales area of Sears' retail outlet were located in both Pomona and Montclair, Sears was clearly exercising "the privilege of selling tangible personal property at retail" in both cities. Therefore, Sears was subject to being taxed by each of said cities. (Rev. & Tax. Code, § 7202.) However, the statute seems to indicate that the measure of the tax to which each city was entitled should be determined by the receipts from goods which were sold "in the city." (Rev. & Tax. Code, § 7202, subd. (h) (1).) Furthermore, in certain situations in which sales must be allocated, the above quoted regulation 2202 makes determinative of the place of sale that place "where the principal negotiations are carried on." We therefore conclude that in a situation such as the present one where a departmentalized retail outlet is bisected by the common boundary line of two cities, where the principal sales area of certain departments are located entirely within one city or the other, and where the evidence shows the respective receipts of each of said departments, then it is proper to allocate the receipts of each such department to the city in which the department is located. We further conclude that where the principal sales area of any department is located astride the common boundary line, and it is therefore impracticable to locate the sales of such department within one city or the other, then it is proper to apportion the receipts of such department on the basis of proportion of the principal sales area of the department which is located within each of the two cities. The trial court's allocation was made on this basis, and it appears to result in fairly apportioning the tax "imposed for the privilege of selling tangible personal property at retail" in each of said cities.

Montclair's contention that section 7205 should be construed to mean that sales are presumed to have been consummated evenly over the entire area of Sears' place of business cannot be sustained. The statutory presumption was obviously designed for convenience in administration and to deter tax avoidance by claims that certain sales of a retailer had been consummated at places other than his place of business. It does not purport, however, to locate sales or create a presumption as to the place of sale within the retailer's place of business. All sales involved here were admittedly consummated at Sears' place of business, and we do not reach the question of the rebuttability of section 7205 or regulation 2202 by evidence of where, other than at the place of business,

particular sales of a retailer may actually have been consummated.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.

The petition of appellant City of Montclair for a rehearing was denied January 20, 1960. Peek, J. pro tem.,* participated therein in place of White, J., who deemed himself disqualified.

*Assigned by Chairman of Judicial Council.