Filed 12/18/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| CITY OF SOUTH SAN FRANCISCO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BOARD OF EQUALIZATION,<br><br>    Defendant and Appellant;<br><br>CITY OF EL SEGUNDO et al.,<br><br>    Interveners and Appellants. | A137173<br><br>(San Francisco City and County<br>Super. Ct. No. CPF-09-509231) |
| CITY OF ALAMEDA et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>BOARD OF EQUALIZATION,<br><br>    Defendant and Appellant;<br><br>CITY OF EL SEGUNDO et al.,<br><br>    Interveners and Appellants. | A137186<br><br>(San Francisco City and County<br>Super. Ct. No. CPF-09-509234) |


Under the State Board of Equalization's (SBE) interpretation of the Revenue and Taxation Code, all retail sales of tangible personal property stored, used, or consumed in California are subject, with limited exceptions, to either a state sales or use tax. SBE applies a state sales tax when a California business is involved in the sale and title to the property passes to the customer in California. (See Rev. & Tax Code, §§ 6006, subd. (a); 6010.5, 6051; Cal. U. Com. Code, § 2401, subd. (2).) If these two conditions are not

1

satisfied, the sale is subject to a use tax.  (See Rev. & Tax Code, §§ 6201, 6202, 6203, 6401.)[1]

For over 50 years SBE has interpreted the local sales and use tax law (the Bradley-Burns Uniform Local Sales and Use Tax Law (Bradley-Burns Act); § 7200 et seq.) as being consistent with section 6001 et seq. of the California Sales and Use Tax Law (the State Tax Law).  Accordingly, it subjects the retail sale of personal property to a local sales tax whenever the state sales tax applies and subjects such a sale to a local use tax whenever the state use tax applies.  (See Cal. Code Regs., tit. 18, § 1803.)[2]  Whether SBE administers a local sales or use tax has significant consequences for cities and counties: *all local sales tax* revenue goes to the city where the sale was consummated while *local use tax* revenue is allocated to the county and *distributed* by the county to *its cities* out of a countywide pool.  The city in which the sale was transacted will usually receive less revenue when a local use tax rather than a local sales tax is imposed.

Seven California cities (City Petitioners) filed for writ of mandate objecting to SBE's determination that the Bradley-Burns Act and the State Tax Law are identical when determining whether to apply a sales or use tax.  Unlike SBE, City Petitioners claimed that under section 7205, subdivision (a), of the Bradley-Burns Act, all sales negotiated in a business in their city should be subject to a local sales tax—not a local use tax.  Under their construction of the statutes, a *local sales tax* applies to all transactions consummated at a retail store in California *even when* the purchased item is shipped from an out-of-state warehouse to the California consumer and the transaction is therefore subject to a *state use tax*.  The trial court agreed with City Petitioners' interpretation of section 7205, subdivision (a), but denied City Petitioners' request to have the relief apply retroactively.

This appeal presents two principal questions:  Did the trial court correctly interpret section 7205, subdivision (a) and did SBE abuse its discretion by using the California

---

[1]  All further unspecified code sections refer to the Revenue and Taxation Code.

[2]  All references to regulations are to sections in title 18 of the California Code of Regulations.

2

Uniform Commercial Code (CUCC) to determine when title to the goods passed? We conclude SBE has been applying the law correctly. Accordingly, we reverse the portion of the judgments granting the petitions for writ of mandate.

## BACKGROUND

### *Legal Background*

#### *State Tax Law*

California "entered the field of sales and use taxes . . . with the enactment of the Retail Sales Tax Act of 1933 (Stats. 1933, ch. 1020, § 1, p. 2559), and the Use Tax Act of 1935 (Stats. 1935, ch. 361, § 1, p. 1297.)" (*Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 135, disapproved on other grounds in *Yamaha, supra,* 19 Cal.4th at page 15.) Since 1943, these two acts have been codified in Division 2, Part 1 in the Revenue and Taxation Code as the Sales and Use Tax Law (§ 6001 et seq.). The State Tax Law "embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. [Citations.] The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question. In essence**,** ' "[a] sales tax is a tax on the freedom of purchase [and a] use tax is a tax on the enjoyment of that which was purchased. [Citations.]" ' " (*Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 66-67, fns. omitted.)

The sales tax is imposed on retailers "[f]or the privilege of selling tangible personal property at retail . . . in this state . . . ." (§ 6051.) "The retailer is the taxpayer, not the consumer." (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1104, italics and fn. omitted.) The central principle of the sales tax is that retail sellers are subject to a tax on their "gross receipts" derived from retail "sale" of tangible personal property. (§ 6051.) The term "sale" means "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration." (§ 6006, subd. (a).)

3

In contrast, "the use tax falls on the purchaser, although the retailer may collect the tax as an agent. (§§ 6202, 6203 . . . .)" (*Loeffler v. Target Corp., supra,* 58 Cal.4th at p. 1104, fn. 5.) California imposes a use tax on tangible personal property that is (1) purchased from a retailer, (2) stored, used, or consumed in this state, and (3) for which no California sales tax was paid at the time of purchase. (§§ 6201, 6202, 6401; Cal. Code Regs., tit. 18, § 1620, subd. (b); *Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 520.) The law presumes that tangible personal property brought into California is purchased for storage, use or other consumption here. (§ 6246.)

The use tax complements the sales tax by preventing the sales tax from resulting in an " 'unfair burden being placed upon the local retailer engaged solely in intrastate commerce as compared with the case where the property is *purchased* [out of state] *for use* or storage in California and is used or stored in this state. The two taxes are complementary to each other with the aim of placing the local retailers and their out-of-state competitors on an equal footing.' " (*Union Oil Co. v. State Bd. of Equalization* (1963) 60 Cal.2d 441, 449.) A credit against the use tax is allowed for sales taxes paid to another state with respect to the property. (§ 6406.) A transaction is exempt from the use tax if it is subject to the sales tax. (§ 6401.)

In 1956, SBE promulgated SBE Ruling 2203, the predecessor of present Regulation 1803. This ruling stated: "(a) In any case in which state sales tax is applicable . . . , state-administered local sales tax is also applicable, if the place of sale . . . is in a county having a state-administered local tax, or is in a city within such a county. In any case in which the state sales tax is inapplicable . . . , state-administered local sales tax is also inapplicable. Thus, if title to the property sold passes to the purchaser at a point outside this State, state-administered local sales tax does not apply regardless of participation in the transaction by a California retailer. . . ."

In 1970, SBE promulgated Regulation 1803, which amended and renumbered former ruling 2203. Regulation 1803 provides in relevant part: "(a) Sales Tax. [¶] (1) IN GENERAL. Except as stated below, in any case in which state sales tax is applicable,

4

state-administered Bradley-Burns uniform local sales tax is also applicable, if the place of sale is in a county imposing a state-administered local tax. In any case in which state sales tax is inapplicable, state-administered local sales tax is also inapplicable. Thus, if title to the property sold passes to the purchaser at a point outside this state, state-administered local sales tax does not apply regardless of participation in the transaction by a California retailer. . . ."

Seven years earlier, in 1963, the California Legislature adopted the California version of the Uniform Commercial Code. Section 2401, subdivision (2), of the CUCC states in pertinent part: "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading. [¶] (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but [¶] (b) If the contract requires delivery at destination, title passes on tender there." (Cal. U. Com. Code, § 2401, subd. (2); see Cal. Code Regs., tit. 18, § 1620, subd. (a)(2)(A).)

In 1965, the Legislature enacted section 6010.5 (Assem. Bill No. 1086). It states: "For the purposes of this part, the place of the sale or purchase of tangible personal property is the place where the property is physically located at the time the act constituting the sale or purchase, as defined in this part, takes place." (§ 6010.5.) A Memorandum dated July 8, 1965, written by Hale Champion, Director of Finance, to Governor Edmund G. Brown, stated that this statute "would maintain the status quo and prevent complications which might result from recent changes in the Uniform Commercial Code." According to a letter dated June 10, 1965, to the Governor from Assemblyman Alfred E. Alquist, this statute was necessary "because of a provision in the Commercial Code which provides that the place of sale can be where the documents of title are exchanged. The Commercial Code provision would allow avoidance of the sales

5

tax on the sale of property physically located in California by exchanging documents of title outside of California."

### Local Tax Law

In 1955, the Legislature enacted the Bradley-Burns Act, which became operative in 1956, as part of the Revenue and Taxation Code. (§ 7200, et seq.; Stats. 1955, ch. 1311, § 1, p. 2381; see *County of Sonoma v. State Bd. of Equalization* (1987) 195 Cal.App.3d 982, 985.) The Act authorizes counties and cities to apply a local sales or use tax, but they are required to contract with SBE for the performance of all administrative functions, including tax collection. (§ 7202, subd. (d).) Once SBE collects county sales taxes, SBE is obligated to transmit those revenues back to the counties pursuant to contract or state law. (§ 7204.)

The purpose of the Bradley-Burns Act "was to provide an additional source of tax revenue for counties, to encourage uniform and integrated sales and use tax programs throughout the respective counties, to require a city retailer to pay only one combined sales and use tax (with the city retaining all of the tax imposed under the city ordinance and the county receiving the difference, if any, between the city tax and the county tax), and to make available to the cities and counties the distinct advantage of having the integrated sales and use tax program administered and the taxes collected by the state." (*City of San Joaquin v. State Bd. of Equalization* (1970) 9 Cal.App.3d 365, 369-370 (*City of San Joaquin*).)

A county must first adopt an ordinance imposing a one and one-quarter percent sales and use tax throughout the county. (§§ 7202, subds. (a)-(g), 7203.)[3] Each city

---

[3] Section 7203 provides the following regarding the local use tax: "The use tax portion of any sales and use tax ordinance adopted under this part shall impose a complementary tax upon the storage, use or other consumption in the county of tangible personal property purchased from any retailer for storage, use or other consumption in the county. That tax shall be at the rate of 1 1/4 percent of the sales price of the property whose storage, use or other consumption is subject to the tax and shall include: [¶] (a) Provisions identical to the provisions contained in Part 1 (commencing with Section 6001), other than Section 6201 insofar as those provisions relate to the use tax, except that the name of the county as the taxing agency enacting the ordinance shall be

6

within the county wishing to participate must adopt an ordinance conforming to the requirements of the Bradley-Burns Act and must include, in pertinent part: "(1) A provision imposing a tax for the privilege of selling tangible personal property at retail upon every retailer in the city at the rate of 1 percent or less of the gross receipts of the retailer from the sale of all tangible personal property sold by that person at retail in the city and a use tax of 1 percent or less of purchase price upon the storage, use or other consumption of tangible personal property purchased from a retailer for storage, us or consumption in the city. [¶] (2) Provisions identical to those contained in Part 1 (commencing with Section 6001), insofar as they relate to sales and use taxes, except that the name of the city as the taxing agency shall be substituted for that of the state (but the name of the city shall not be substituted for the word 'state' in the phrase 'retailer engaged in business in this state' in Section 6203 nor in the definition of that phrase in Section 6203) and that an additional seller's permit shall not be required if one has been or is issued to the seller under Section 6067. [¶] (3) A provision that all amendments subsequent to the effective date of the enactment of Part 1 (commencing with Section 6001) relating to sales and use tax and not inconsistent with this part, shall automatically become a part of the sales and use tax ordinance of the city." (§ 7202, subds. (h)(1), (2), & (3); see also Cal. Code Regs., tit. 18, § 1802.) All cities and counties in California have enacted ordinances conforming to the Bradley-Burns Act.

Section 7205, enacted in 1955,[4] was amended in 1961, 1998, and 2005. The current statute provides in relevant part: "For the purpose of a sales tax imposed by an

---

substituted for that of the state . . . . [¶] (b) A provision that all amendments subsequent to the date of such ordinance to the provisions of the Revenue and Taxation Code relating to the use tax and not inconsistent with this part shall automatically become a part of the ordinance. [¶] (c) A provision that the storage, use or other consumption of tangible personal property, the gross receipts from the sale of which has been subject to sales tax under a sales and use tax ordinance enacted in accordance with this part by any city and county, county, or city in this state, shall be exempt from the tax due under this ordinance. . . ."

[4] The original statute read, in pertinent part: "All retail sales for the purpose of this part shall be presumed to have been consummated at the place of business of the

7

ordinance adopted pursuant to this part, all retail sales are consummated at the place of business of the retailer unless the tangible personal property sold is delivered by the retailer or his or her agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination." (§ 7205, subd. (a).)

In 1955, the Report on Assembly Bill No. 3111 stated that for the purposes of this bill, "all retail sales are to be presumed to have been consummated at retailer's place of business, unless property sold is delivered by retailer to out-of-state destination or to common carrier for delivery thereto." The 1961 amendment changed the provision "that all retail sales are, generally, presumptively consummated at retailer's place of business, to provision that for sales tax purposes all retail sales are so consummated." (Assem. Bill No. 2426, Mar. 28, 1961.) SBE's Acting Secretary, Harry Say, in a letter dated June 16, 1961, to Governor Edmund G. Brown's legislative secretary explained: "Section 7205 of existing law sets forth the place of sale for purposes of local sales tax and therefore determines which city or county is entitled to the tax on a particular sale. [The amendments to section 7205] clarif[ies] the wording so that there shall be no doubt as to the place of sale."

The revenue from a local sales tax is allocated to the city where the sale occurred. SBE allocates the revenue for a local use tax to the county where the merchandise is delivered, and distributed through a "countywide pool" to all of the jurisdictions in that county.

### Facts and Proceedings Below

The relevant facts are undisputed. In the mid-1980's or early 1990's, a number of cities retained a specialist tax correction service to seek a correction and reallocation of the local sales and use taxes and they filed petitions with SBE (the mass appeal). The

---

retailer unless the tangible personal property sold is delivered by the retailer or his agent to an out-of-state destination or to a common carrier for deliver to an out-of-state destination. . . ." (Former § 7205.) The presumption of consummation at the retailer's place of business, which was thought to create ambiguity, was eliminated by the Legislature in 1961.

transactions at issue involved sales negotiated at places of business in California cities and the purchased goods were shipped from out of state directly to consumers in California. It was alleged, among other things, that a transaction did not have to be subject to the state sales tax in order for the local sales tax to be allocated directly to the place of business negotiating the sale.

In April 2001, an SBE hearing officer issued a Decision and Recommendation rejecting the mass appeal. The Decision and Recommendation stated that the local sales tax could be allocated directly to the registered place of business where the sale was negotiated only if the transaction was subject to the state sales tax. It concluded that application of the sales tax required both local participation by an office of the seller *and* transfer of title in California.

The Decision and Recommendation was appealed to SBE's Board Management, and the appeal was denied in January 2004. An application for a hearing before SBE's Board Members was filed in 2004. In 2010, SBE denied the petitions for reallocation of the local tax.

Meanwhile, on February 20, 2009, prior to SBE's filing its final decision on the mass appeal, the City of South San Francisco filed a petition for writ of mandate and, on the same day, the Cities of Alameda, Irvine, Newport Beach, Roseville, San Ramon, and Santa Fe Springs also filed a petition for writ of mandate.[5] The two petitions alleged that

---

[5] The City of Brisbane (Brisbane) also filed a petition for writ of mandate seeking to invalidate Regulation 1803, and the appeal in this companion case is *City of Brisbane v. California State Board of Equalization,* A137185 (*Brisbane* case). On January 8, 2013, we issued an order consolidating the *City of South San Francisco v. State Board of Equalization*, A137173 (*South San Francisco* case), *Brisbane v. State Board of Equalization*, A137185, and *City of Alameda v. State Board of Equalization,* A137186 (*Alameda* case) for purposes of preparing a single record, oral argument, and decision. The *South San Francisco* and *Alameda* cases were briefed together and separate briefs were filed in the *Brisbane* case.

The *Brisbane* case has facts and issues unique to it and, on September 15, 2014, we vacated our order to consolidate oral argument and the decision as it relates to the *Brisbane* case. We did not vacate that order as it relates to the *South San Francisco* and *Alameda* cases.

SBE had improperly distributed local sales tax revenues from transactions involving sales negotiated in these cities "and fulfilled by shipment of merchandise from out of state." SBE's error, according to the petitions, was in treating this revenue as local "use" tax revenue, which went to the county to be distributed through a countywide pool, rather than local "sales tax" revenue, which went directly to the city where the retailer was located. SBE's treatment of the revenue was, according to the petitions, contrary to the Bradley-Burns Act.

All of the cities and counties in California received notice of the three petitions filed. The City of El Segundo (El Segundo) filed a complaint in intervention in support of the City Petitioners. The City of Alhambra (Alhambra) and just under 90 other jurisdictions intervened on the side of SBE. On April 11, 2011, the trial court granted the motions to intervene.

The two cases in this appeal and the Brisbane case, which were never consolidated in the trial court, were heard together in a bench trial. The parties stipulated to the facts. The court directed SBE to present testimony concerning the burden of applying City Petitioners' requested relief retroactively, and one witness testified on this issue.

The superior court filed its 78-page Final Statement of Decision on July 31, 2012. The court found Regulation 1803 to be invalid but it applied its ruling prospectively only.[6] The court filed its judgments on the petitions for writ of mandate on September 18, 2012.[7]

---

[6] On September 18, 2012, the court issued a supplement to its Final Statement of Decision. In its supplemental decision, the court considered and rejected SBE's argument that the court's ruling was limited to the situation where the California retailer had a single place of business.

[7] The court filed five judgments: Three judgments were entered on the three separate petitions and two were on behalf of El Segundo.

10

SBE and 86 interveners[8] filed timely notices of appeal from the judgments. City Petitioners and Intervener El Segundo also filed timely notices of appeal from the judgments.

## DISCUSSION

### I. *The Issues and Standard of Review*

The parties agree that the transactions at issue involve sales negotiated at a retailer in a California city and, at the time of the sale, the goods were physically located out of state and shipped directly from the out-of-state location to a consumer in California. SBE maintains that these transactions were subject to both a state and local use tax under both the State Tax Law (§ 6001 et seq.) and the Bradley-Burns Act (§ 7200 et seq.), which authorizes imposition of local sales and use taxes by counties and cities. City Petitioners do not dispute that a state use tax applies to these transactions under the State Tax Law but assert that the Bradley-Burns Act dictates when local taxes apply and the Bradley-Burns Act mandates that these transactions are subject to a local sales tax.

As earlier noted, Regulation 1803 provides that the local sales tax applies only when the state sales tax applies and the local use tax applies only when the state use tax applies. In general, SBE imposes the state sales tax when a local retailer participates in the transaction and title transfers to the purchaser in California; otherwise, the state use

_____

[8] A few cities/counties did not join in the appeal. The following cities and counties intervened on the side of SBE and appealed the judgment: the Cities of Alhambra, Aliso Viejo, Anderson, Apple Valley, Arcadia, Azusa, Baldwin Park, Banning, Bell Gardens, Bellflower, Benicia, Burbank, Calimesa, Carson, Cathedral City, Cerritos, Claremont, Colton, Commerce, Corona, Costa Mesa, Covina, Dublin, El Centro, Elk Grove, Fountain Valley, Gonzales, Huron, Imperial Beach, Industry, Irwindale, Laguna Hills, Laguna Niguel, La Habra, La Palma, Lake Forest, Lakewood, Livermore, Loma Linda, Marina, Merced, Montclair, Moreno Valley, Morro Bay, Mountain View, Napa, Oakley, Oceanside, Oxnard, Pacifica, Paramount, Patterson, Pinole, Placentia, Placerville, Pleasant Hill, Pleasanton, Rancho Cucamonga, Rancho Mirage, Rancho Santa Margarita, Redlands, Redondo Beach, Riverside, Rosemead, San Carlos, San Dimas, San Francisco, San Joaquin, San Luis Obispo, San Pablo, San Rafael, Seaside, Signal Hill, Solana Beach, South Lake Tahoe, Sunnyvale, Taft, Temple City, Upland, Vacaville, Vallejo, Yorba Linda, and Yreka and the Counties of Placer, San Francisco, Riverside, and San Mateo.

tax is applied.  (See Cal. Code Regs., tit. 18, §§ 1620, subds. (a)(1), (a)(2)(A) & (b); 1628, subd. (b)(3)(D).)  SBE maintains that the Bradley-Burns Act, including Revenue and Tax Code section 7205, subdivision (a), is silent regarding when a local sales tax should apply and therefore the State Tax Law is incorporated into the Bradley-Burns Act under section 7202, subdivisions (h)(2) and (3).  The State Tax Law defines a sale as "any transfer of title" (Rev. & Tax Code, § 6006, subdivision (a)), but the Revenue and Taxation Code does not specify when transfer of title occurs.  Therefore, SBE uses the CUCC to determine the point in time when title transfers.

City Petitioners contend that section 7205, subdivision (a) specifies that the local sales tax applies to all transactions negotiated by a retailer in a California city regardless where or when title passes.  According to them, the State Tax Law is inconsistent with section 7205, subdivision (a), and cannot be incorporated into the Bradley-Burns Act.  (See § 7202, subd. (h)(3).)  The trial court agreed with City Petitioners' construction of section 7205, subdivision (a), and concluded that Regulation 1803 is invalid.

The first question raised by this appeal is the interpretation of section 7205, subdivision (a), which presents a question of law subject to de novo review.  (*Phillips, Spallas & Angstadt, LLP v. Fotouhi* (2011) 197 Cal.App.4th 1132, 1138-1139.)  "[W]e are to exercise our own independent judgment in reviewing the matter, unfettered by any conclusions reached by the trial court, and any errors committed by the trial court with respect to the proper standard of review will be cured by our independent analysis of the issues." (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1289.)  As we explain below, the trial court's construction of section 7205, subdivision (a) is incorrect; the Bradley-Burns Act does not specify when a transaction is subject to a local sales tax.

The second question is SBE's use of the CUCC to determine when title passes in light of the Revenue and Taxation Code's silence on this issue.  "Where a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections* (2002) 96

12

Cal.App.4th 824, 827.) We therefore must consider whether City Petitioners demonstrated that SBE abused its discretion by using the CUCC. (See *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1154 [in mandate proceeding brought under Code Civ. Proc. § 1085, petitioner always bears burden of proof].)

## II. *The Construction* **of** *Section 7205, Subdivision (a)*

**A.** *Section 7205, Subdivision (a) Does Not Specify When a Sales Tax Applies*

SBE argues that section 7205, subdivision (a) of the Bradley-Burns Act, which we reiterate below,[9] does not determine whether a sale is subject to a local sales tax because, as made clear by the prefatory language in this statute, this statute applies only after SBE has concluded that the transaction is subject to a sales tax.

Our principal task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. (*In re Greg F.* (2012) 55 Cal.4th 393, 406.) We consider first the words of a statute, as the most reliable indicator of legislative intent. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529.) " ' "Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]' [Citation.]" (*People v. Loeun* (1997) 17 Cal.4th 1, 9.)

When interpreting statutes, courts should give meaning to every word of the measure and avoid constructions that would render any word or provision surplusage. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634.) "An interpretation that renders statutory language a nullity is

---

[9] Section 7205, subdivision (a) reads: "(a) For the purpose of a sales tax imposed by an ordinance adopted pursuant to this part, all retail sales are consummated at the place of business of the retailer unless the tangible personal property sold is delivered by the retailer or his or her agent to an out-of-state destination or to a common carrier for delivery to an out-of-state destination. The gross receipts from those sales shall include delivery charges, when those charges are subject to the state sales and use tax, regardless of the place to which delivery is made."

obviously to be avoided." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357.) To the extent statutory language is ambiguous or open to more than one reasonable interpretation, we may turn to legislative history for guidance. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1105.)

We agree with SBE that the prefatory language of the statute—"For the purpose of a sales tax imposed" by an ordinance adopted pursuant to the Bradley-Burns Act—limits the application of section 7205, subdivision (a) to transactions already determined by SBE to be subject to a sales tax under applicable law. (See discussion at pages 21-24 in Part III., *post*.) One of the definitions of "purpose," when that word is used as a noun, is "the reason why something is done or used" or "the aim or intention of something." (Merriam-Webster Dictionary, <www.meriam-webster.com/ dictionary/com>.) For the purpose of something indicates that it is the reason for which something is being done or created or for which something exists. (See Oxford Dictionaries, <www.oxforddictionaries.com/us/definition/american_english/purpose>.) The plain meaning of the words in this statute is that for those situations where a sales tax applies, the retail sales are consummated at the place of business of the retailer unless the item is shipped out of state. (§ 7205, subd. (a).) Furthermore, the prefatory language in section 7205, subdivision (a) is in the past tense, which supports SBE's interpretation that this statute applies to those situations where the law has *imposed* a sales tax.

The trial court's indifference to the prefatory language and its limiting effect on the scope of the statute transgresses the fundamental principle "that courts must strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous." (*Klein v. United States America* (2010) 50 Cal.4th 68, 80.) Apparently, distracted by marginally relevant statutes and inapposite cases urged upon it by City Petitioners in an apparent effort to obfuscate the issue,[10] the trial court

_____

[10] When asked about the prefatory language at oral argument in this court, City Petitioners proposed that this phrase in section 7205, subdivision (a) refers to section 7202, subdivision (h)(1). Section 7202, subdivision (h)(1) sets forth the rate to be charged when imposing a local sales or use tax. The prefatory language in section 7205,

14

never undertook the essential inquiry into the genuine purpose of section 7205, subdivision (a).  Nor, inexplicably, did SBE vigorously encourage it to do so.

The purpose of section 7205, subdivision (a) is not to dictate whether a sales tax applies, as City Petitioners maintain, but where the sale was consummated if a local sales tax is applicable; that is, the statute sets forth a place of sale rule for determining which city should receive the sales tax revenue generated by a particular sale.  For example, if the retailer has several businesses in California and the item purchased is physically located at a business or warehouse in a California city different from where the purchase was made, section 7205, subdivision (a) directs that the local sales tax be allocated to the city where the purchase was consummated.

The view of the trial court and City Petitioners that *City of Pomona v. State Board of Equalization* (1959) 53 Cal.2d 305 (*City of Pomona*) is consistent with the meaning they attribute to the statute is simply mistaken.  If anything, this case supports the position of SBE.

*City of Pomona, supra,* 53 Cal.2d 305, one of the very few cases that discusses the application of section 7205, subdivision (a), considered which city and county should receive the sales tax revenue from a retail sales outlet of Sears, Roebuck and Company (Sears) that was bisected by the common boundary line of Pomona, in Los Angeles County, and the City of Montclair, in San Bernardino County.  (*City of Pomona,* at pp. 306-307.)  In that case, unlike this one, the parties agreed that the sales were subject to a state sales tax; the Supreme Court only had to determine which city was entitled to the local sales tax revenue.  The court concluded that "where the principal sales area of certain departments are located entirely within one city or the other, and where the evidence shows the respective receipts of each of said departments, then it is proper to

_____

subdivision (a) makes it clear that it is referring to a sales tax only.  If the Legislature intended to refer to section 7202, subdivision (h)(1), it would have specified, "For the purpose of a sales tax" rate imposed.  Furthermore, it makes no sense to state, "For the purposes of" the sales tax rate imposed, "all retail sales are consummated at the place of business of the retailer . . . ."  (See § 7025, subd. (a).)

15

allocate the receipts of each such department to the city in which the department is located." (*Id.* at p. 312.)

To the limited extent that *City of Pomona* is relevant, it is consistent with our construction of section 7025, subdivision (a), because it confirms that the purpose of the statute is simply to determine which city is entitled to the revenue from the local sales tax,[11] not whether a local sales tax is applicable.[12]

---

[11] City Petitioners stress that sales taxes are imposed on retailers for the privilege of selling tangible personal property at retail and, quoting *City of Pomona,* they point out that they are " 'not a tax on the sale or because of the sale but . . . an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales.' " (*City of Pomona, supra,* 53 Cal.2d at p. 309.) City Petitioners maintain that this privilege entitled them to the local sales tax, which they did not lose simply because the retailer shipped the items from out of state to a California buyer.

The passage in *City of Pomona* just quoted does not support City Petitioners' argument. Immediately before the portion they quote, the *City of Pomona* court stated, "The Bradley-Burns Act provides that 'the sales tax portion of any sales and use tax ordinance adopted under this part shall be imposed *for the privilege of selling tangible personal property at retail . . .*' " (*City of Pomona, supra,* 53 Cal.2d at p. 309), making it clear that *both* the sales and use tax were imposed for the privilege of selling tangible personal property at retail.

[12] The trial court's ruling also relied on a Virginia Supreme Court decision, *Commonwealth Dept. of Taxation v. Blanks Oil Co.* (1998) 498 S.E.2d 914 (*Blanks Oil*), which considered whether a local tax on sales of home heating fuel should be at the place of delivery or at the place of the dealer's business. (*Ibid.*) Both the place of delivery and the place of the dealer's business were in counties in the State of Virginia but the counties where the fuel was being delivered exempted the sale of fuel from the local sales tax while the county of the dealer's business did not have such an exemption. (*Id.* at p. 915.) The local sales statute fixed the place of business of the dealer as the place of sale while the Uniform Commercial Code provided that " 'title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods.' " (*Blanks Oil*, at p. 916.) The court concluded that the Uniform Commercial Code, a statute of general application, could not override the more specific local sales tax statute. (*Blanks Oil*, at p. 916.)

*Blanks Oil* is not helpful to City Petitioners because it did not involve a sale where the purchased item was physically located outside the State of Virginia. Since the sales at issue occurred in Virginia, the court applied the local sales tax law to determine the place of sale. Similarly, here, SBE uses the Bradley-Burns Act to determine which city is entitled to the sales tax for those sales where title passes in the State of California.

16

City Petitioners also unwarrantedly rely upon the last sentences in section 7205, subdivision (a),[13] section 7205, subdivision (b)(2),[14] and Regulation 1628 as supporting their argument that a local sales tax applies whenever a sale is negotiated in a California city. But the last sentence in section 7205, subdivision (a) refers to delivery charges,[15] subdivision (b)(2) of section 7205 concerns the sale of jet fuel, and Regulation 1628[16]

[13] City Petitioners quote the following language at the end of section 7205, subdivision (a): "The gross receipts from those sales shall include delivery charges, when those charges are subject to the state sales and use tax, regardless of the place to which delivery is made." They maintain that the Legislature directly tied state sales and use tax to delivery charges and since the Legislature did not do that with the place of sale rule in this statute, the Legislature must have intended the State Tax Law to apply only to delivery charges. Contrary to City Petitioners' assertion, as already discussed, the first sentence in the statute specifically connects the home sale rule to state taxes when it states, "For the purpose of a sales tax imposed . . . ." (§ 7205, subd. (a).)

[14] Section 7205, subdivision (b)(2) reads: "In the case of a sale of jet fuel, the place at which the retail sale of that jet fuel is consummated for the purpose of a sales tax imposed by an ordinance adopted pursuant to this part is the point of the delivery of that jet fuel to the aircraft." City Petitioners assert without providing any analysis that it is significant that this statute provides that the place of sale for jet fuel for local sales taxes is the point when the fuel is delivered to the aircraft. This provision sets forth a place of sale rule for determining *which city* is entitled to the local sales tax from the sale of jet fuel. The place of sale rule for determining which city is entitled to the revenue for the sale of jet fuel under the Bradley-Burns Act differs from the place of sale rule under this Act for the retail sale of tangible personal property. Section 7205, subdivision (b)(2) is not helpful to our interpretation of section 7205, subdivision (a).

[15] Delivery charges are treated differently from the sale of tangible personal property. "In California, . . . , separately stated charges for specified transportation costs of goods are statutorily exempted from sales and use tax. (§§ 6011, subd. (c)(7), 6012, subd. (c)(7).) Transportation charges are regarded as separately stated 'only if they are separately set forth in the contract for sale or in a document reflecting that contract, issued contemporaneously with the sale, such as the retailer's invoice.' (Cal. Code Regs., tit. 18, § 1628, subd. (a).)" (*Dell, Inc. v. Superior Court* (2008) 159 Cal.App.4th 911, 924.)

[16] City Petitioners cite subdivisions (b)(3)(D) and (b)(4) of Regulation 1628. The former simply specifies when title passes and is relevant for determining transportation charges when transportation costs are included in the taxable receipts, and the latter also concerns when transportation costs are part of the sales prices. Regulation 1628 comports with section 7205, subdivision (a) and provides that the city where the sale is

17

concerns transportation costs.  The language City Petitioners seize upon in these provisions is therefore not germane to any issue raised by this appeal.

## B.  *Legislative History and Policy Establish that Local Tax Law is to be Consistent with State Tax Law*

The legislative history of the relevant statutes and public policy also support our interpretation of section 7205, subdivision (a).  When considering whether to pass the Bradley-Burns Act in 1955 (Assem. Bill No. 3111), the Assembly Interim Committee on Revenue and Taxation prepared in January 1955 a report on its study of the "Property Tax Exemptions, Personal Property Tax Administration and Local Sales Taxes."  Exhibit III, attached to this report, with the subheading, "Resolution Re Uniform Sales Tax," stated the following in relevant part:  " 'Whereas, The Special Sales Tax Committee of the League Board of Directors has met with a similar committee of the California Retailers Association in an effort to solve the perplexing problems of non-uniformity of local sales taxes;' " be it resolved that " 'the board of directors of the League of California Cities cause to be presented to the 1955 Session of the Legislature of the State of California a uniform sales tax program embracing the following policy:  [¶] Recognizing that the need for sales tax uniformity varies in degree throughout the State, and recognizing that the desire for additional revenue from the local sales tax source also varies throughout the State, it is suggested that complete uniformity throughout California may be achieved gradually.  To accomplish this, it is recommended that:  [¶] 1.  Legislative authority be granted to each county to institute a sales tax of 1 percent, *applicable in exactly the same manner as the state sales tax.*' "  (Italics added.)

The Inter-Departmental Communication on Assembly Bill No. 3111, dated June 23, 1955, from Edward P. Hollingshead, Deputy Attorney General, to Governor Goodwin J. Knight, emphasized that the state and local sales and use taxes were to be substantially

---

consummated, not the city where the delivery is made, is the place of sale for calculating the delivery charges as part of the gross receipts.  This regulation does not suggest that the sale of a personal tangible item can be subject to the state's use tax concomitantly with being subject to the local sales tax.

the same.  The communication stated:  "Under the provisions of this bill, the counties and cities of this state are authorized to adopt by action of their boards of supervisors a sales and use tax *substantially the same as the State sales and use tax imposed* by Part 1, Division 2, of the Revenue and Taxation Code.  Generally, the bill sets up a list of requirements which must be met by a city or county in enacting a sales and use tax ordinance, *including provisions requiring conformity with the State Sales and Use Tax Law. . . .*"  (Italics added.)

Additionally, the legislative history of section 7205, subdivision (a) conflicts with the trial court's interpretation.  The Legislature amended section 7205 in 1961, 1998, and 2005.  In 1956, subdivision (a) of SBE's Ruling 2203 stated, "In any case in which state sales tax is applicable . . . , state-administered local sales tax is also applicable . . . [and] [i]n any case in which state sales tax is inapplicable . . . , state-administered local sales tax is also inapplicable."  Subsequently, in 1970, Regulation 1803 replaced Ruling 2203.  The Legislature never overturned or mentioned Ruling 2203 when it amended section 7205 in 1961; nor did the Legislature object to Regulation 1803 in 1998 and 2005 when it again amended section 7205.  "It is assumed that the Legislature has in mind existing laws when it passes a statute.  [Citations.]  'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.'  [Citations.]"  (*Estate of McDill* (1975) 14 Cal.3d 831, 837-838.)  Here, the Legislature's failure to modify or mention Ruling 2203 or Regulation 1803 when it amended section 7205 indicates that the Legislature did not view section 7205 as inconsistent with Ruling 2203 or Regulation 1803.

City Petitioners' position is also inconsistent with the clear policy of the Bradley-Burns Act.  They claim the policy of the Act was to promote uniformity among cities and counties, not uniformity between the state and local jurisdictions.  (See *City of San Joaquin, supra,* 9 Cal.App.3d at pp. 369-370.)  But the plain language of the Bradley-Burns Act shows that its policy and purpose were to create the uniform application of taxes at *both* the state and local level.  Subdivisions (h)(2) and (3) of section 7202 require

19

that the local ordinances be "identical" to the state sales and use tax law and all amendments "not inconsistent" with the Bradley-Burns Act "automatically become a part of the sales and use tax ordinance of the city." No provision of the Bradley-Burns Act defines a sale and the Act is silent on whether the location of the property has any bearing on the place of sale. Indeed, the Bradley-Burns Act did not need to address these issues because the Legislature expressly provided that the State Tax Law, which defines a sale and sets forth the place of sale rule as where the property is located, is incorporated into the Bradley-Burns Act. (See also *Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 837, italics added [the Bradley-Burns Act was designed to give the taxpayers "the benefit of a scheme which will free them from the burden of complying with *differing regulations of state and local taxes*, avoid the necessity of making payments and reports to several governmental bodies, and permit all auditing to be done by a single agency"]; see also § 7224 ["Each local jurisdiction has the right to have the law administered in a uniform manner"].)

The trial court believed SBE's interpretation of the Bradley-Burns Act is contrary to public policy because it is "unfair to cities that provide the infrastructure to support local sales but do not receive the sales tax revenues clearly contemplated by the" Bradley-Burns Act. The court failed to acknowledge, however, that the transactions at issue were not exempted from any tax by SBE's interpretation, but were subjected to a local use tax. (See § 7203 ["The use tax portion of any sales and use tax ordinance adopted under this part shall impose a complementary tax upon the storage, use or other consumption in the county of tangible personal property purchased from any retailer for storage, use or other consumption in the county"].) The trial court seemed unaware the local use tax is also part of the Bradley-Burns Act and the local use and local sales taxes are mutually exclusive and complementary. Applying the local use tax to the transactions at issue in this appeal clearly furthers the purpose of the Bradley-Burns Act.[17]

---

[17] City Petitioners maintain that SBE's interpretation of the Bradley-Burns Act ignores and denies the independent authority of cities and counties to tax selling activities conducted within their boundaries, as recognized by section 7202, subdivision (h).

20

Accordingly, we conclude that section 7205, subdivision (a) sets forth a place of sale rule to determine which city is entitled to the revenue from the local sales tax for those transactions that are subject to a sales tax. This provision is silent about whether a sales tax should be imposed.

### III. *Determining When a Sales or Use Tax Applies*

**A.** *SBE Uses Section 6006, Subdivision (a), Section 6010.5, and the CUCC*

When determining whether a sales or use tax should apply to a transaction, SBE applies both the State Tax Law and the CUCC. Under the State Tax Law, a " 'sale' " is "[a]ny transfer of title . . . for a consideration" (§ 6006, subd. (a)), and the place of the sale is where the property is physically located at the time of sale (§ 6010.5). Since these statutes are not inconsistent with the correct interpretation of section 7205, subdivision (a), these two statutes in the State Tax Law become part of the Bradley-Burns Act under section 7202, subdivisions (h)(2) and (3).[18]

As noted earlier, neither the Bradley-Burns Act nor the State Tax Law addresses when transfer of title occurs. We therefore must consider whether SBE abused its discretion by using section 2401, subdivision (2), of the CUCC to determine that issue. The State Tax Law defines a sale as transfer of title (§ 6006, subd. (a)), but does not set forth any rule for determining the point at which title passes. Since the sales at issue in this appeal were negotiated at retailers in a California city but had to be shipped to the

---

SBE's interpretation of the Bradley-Burns Act does not prevent the city or county from collecting local sales *and* use taxes pursuant to the Bradley-Burns Act. Cities and counties, however, may not impose taxes that are contrary to the law and no statute authorizes cities and counties to impose a local sales tax on those transactions that are subject to a state use tax under the State Tax Law.

[18] Section 7202, subdivision (h)(2) provides: "Provisions identical to those contained in Part 1 (commencing with Section 6001), insofar as they relate to sales and use taxes . . . ." Subdivision (h)(3) states that "all amendments subsequent to the effective date of the enactment of Part 1 (commencing with Section 6001) relating to sales and use tax and not inconsistent with this part, shall automatically become a part of the sales and use tax ordinance of the city." (§ 7202, subd. (h)(3).)

21

California consumer from an out-of-state location, title passed out of state under section 2401, subdivision (2) of the CUCC,**19** and the use tax applies.

In rejecting SBE's use of the CUCC, the trial court stressed that these more general statutes could "not displace or affect the dispositive place of sale rule" set out in the more specific statute, section 7205, subdivision (a). We disagree with this reasoning because it attributes a meaning to the more specific statute that it does not possess. The court's reasoning also failed to accord SBE's decision to resort to the CUCC the deference it is due. (Evid. Code, § 664; Gov. Code, § 11343.6; *Hahn v. State Board of Equalization* (1999) 73 Cal.App.4th 985, 997.)

Courts have consistently used section 2401 of the CUCC to determine when title passes between sellers and buyers. (See, e.g., *California State Electronics Assn. v. Zeos Internat. Ltd.* (1996) 41 Cal.App.4th 1270, 1276.) As SBE points out, California courts have used the CUCC in combination with the Revenue and Taxation Code when deciding cases involving sales and use tax. (See, e.g., *Associated Beverage Co. v. Board of Equalization* (1990) 224 Cal.App.3d 192, 208-209 [when determining whether the state use tax was properly applied to Seven-Up's purchase of bottles, the court considered section 6006, subdivision (a), and section 2401, subdivision (2) of the California Commercial Code]; *Cal-Metal Corp. v. State Bd. of Equalization* (1984) 161 Cal.App.3d 759, 763-764 [transfer of equipment to partnership was a sale under section 6006, subdivision (a), and court noted that this statute's definition "coincides with the common law definition of a 'sale' and parallels the Commercial Code definition"].)

City Petitioners respond that the cases relied upon by SBE (see, e.g., *Associated Beverage Co. v. Board of Equalization, supra,* 224 Cal.App.3d at pp. 208-209) involved

---

**19** As stated above, unless the contract specifies something to the contrary, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . . [¶] (a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but [¶] (b) If the contract requires delivery at destination, title passes on tender there." (Cal. U. Com. Code, § 2401, subd. (2).)

22

sales for the purposes of the state use tax and did not involve place of sale under the Bradley-Burns Act.[20]  That is true but the cases SBE cites demonstrate the relevance of passage of title to determining the applicability of the sales tax.  Moreover, City Petitioners have cited no authority for their theory that passage of title should be deemed irrelevant to determining whether a local sales tax applies.[21]  More significantly,

---

[20]  City Petitioners argue that before the CUCC was enacted courts applied the sales tax to sales by California retailers when the goods were imported from out of state. City Petitioners rely on *Diebold, Inc. v. State Board of Equalization* (1959) 168 Cal.App.2d 628 and *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, but neither case supports City Petitioners' contention.  In *Diebold*, after considering various agreements and purchase orders, the court concluded that title transferred in California if the evidence showed that the purchase orders were destination contracts with California as the destination or the contract explicitly stated titled transferred in California.  (*Id.* at pp. 637-640.)  When title passed outside California, the court concluded that a sales tax should not be imposed.  Contrary to City Petitioners' argument that this case undermines SBE's use of the CUCC, *Diebold* confirms that passage of title is critical to determining when a sale occurs and its holding is consistent with the CUCC section 2401, subdivision (2).  (See *Diebold,* at pp. 637-640.)

Unlike the sales at issue in this appeal, the contracts in *Select Base Materials v. Board of Equal., supra,* 51 Cal.2d 640 contemplated that title would pass at delivery. This court held that the sale took place when delivery was made to the customer and the cost of transportation prior to the sale, which arose out of charges paid by the seller to independent truckers, was part of the sales price of the granite and properly included in the plaintiff's gross receipts for sales tax purposes under section 6012.  (*Select Base Materials*, at pp. 645-646.)  This case is not inconsistent with SBE's use of the CUCC to determine when title passes.

[21]  With little analysis and almost no discussion, City Petitioners also rely on the language in *Cedars-Sinai Medical Center v. State Bd. of Equalization* (1984) 162 Cal.App.3d 1182, 1188.  In *Cedars-Sinai*, the medical center bought medical equipment from vendors, paid the sales tax due, and subsequently transferred title to the equipment to leasing companies under a leaseback arrangement.  The court held that a sale and leaseback of medical equipment was a structured financing arrangement and not a "sale" subject to sales tax.  The court construed the leaseback transactions as an alternative financing device and ultimately concluded "[t]here was but one sale of the equipment— by the vendors to plaintiff [medical center]." (*Id.* at p. 1189.)  The issue before us is not whether a sale did in fact occur and the *Cedars-Sinai* court never suggests that passage of title is irrelevant to determining where the sale occurs.

23

*Associated Beverage Co.* confirms that SBE properly used the CUCC to determine when a sale occurs for the purposes of deciding whether to apply a sales or use tax.[22]

**B. *SBE Did Not Abuse Its Discretion By Using the CUCC to Determine Passage of Title***

Section 6006, subdivision (a) provides that a sale takes place upon the passage of title, but neither the Bradley-Burns Act nor the State Tax Law specifies when title passes. This silence leaves room for SBE to exercise discretion in making that necessary determination, provided only that it does so in a rational manner consistent with all pertinent provisions of the Revenue and Taxation Code. The authority City Petitioners cite provides no reason to think title is irrelevant when determining whether to apply a sales tax, or that passage of title should not occur at the time and place specified in section 2401, subdivision (2) of the CUCC; namely, that "time and place at which the seller completes his performance with reference to the physical delivery of the goods" unless the contract specifies otherwise. The CUCC provision at issue is fully consistent with the scheme presented by the State Tax Law and the Bradley-Burns Act. As earlier pointed out, where, as here, "a statute leaves room for discretion, a challenger must show the official acted arbitrarily, beyond the bounds of reason or in derogation of the applicable legal standards." (*California Correctional Supervisors Organization, Inc. v. Department of Corrections, supra,* 96 Cal.App.4th at p. 827.) City Petitioners have not shown that SBE's use of the CUCC to determine the time and place at which title passes, and therefore also the applicability of the local sales tax, is unreasonable, arbitrary, or in derogation of any provision of the State Tax Law or the Bradley-Burns Act.

---

[22] City Petitioners claim that in its Ruling 55 (former Cal. Admin. Code, tit. 18, § 2015), SBE applied the sales tax to sales by California retailers when the goods were imported from out of state. Ruling 55 did state that a sales tax would be assessed on transactions involving shipments from out of state in those situations where the retailer's office in California participated by receiving or distributing the goods, but it did not alter the rule that the sales tax did not apply if title to the goods passed out of state. Ruling 55 did not state that out-of-state shipments to a consumer in California were subject to the sales tax or that the passage of title was irrelevant to the application of a sales tax. Ruling 55 did not address whether title to goods passed inside or outside California.

## IV. *Conclusion*

City Petitioners did not meet their burden of proving that Regulation 1803 is invalid. (See *California Correctional Peace Officers Assn. v. State Personnel Bd., supra,* 10 Cal.4th at p. 1154.) As earlier explained, Regulation 1803, which provides that the local sales tax is inapplicable in any situation where the state sales tax is inapplicable, is consistent with the Bradley-Burns Act and is supported by the plain language of the Bradley-Burns Act, which specifies that the local sales and use tax are to be "identical" to the State Tax Law. (See § 7202, subds. (h)(2) & (3).) The correct construction of the relevant statutes incorporates sections 6006, subdivision (a) and 6010.5 into the Bradley-Burns Act (see § 7202, subds. (h)(2) and (3)), and City Petitioners did not demonstrate that SBE's use of the CUCC to determine when title passed to the purchaser was incorrect. Accordingly, we reverse the trial court's judgments invalidating Regulation 1803 and issuing the writs of mandate.

We do not address SBE's argument that the trial court's interpretation of the relevant statutes in the Revenue and Taxation Code violates the commerce clause, because we have concluded that the trial court erred in its construction of the statutes.[23] Since we are reversing the judgments and City Petitioners are not entitled to any relief, we need not, and do not, address the merits of their arguments that they are entitled to retroactive relief.

## DISPOSITION

The judgments invalidating Regulation 1803 and directing writs of mandate to be issued are reversed. The matters are remanded to the trial court for entry of new judgments consistent with this opinion. SBE and the 86 interveners on the side of SBE are awarded the costs of appeal.

---

[23] We also do not consider the merit of various other contentions by SBE including that the trial court erred in placing the burden of proving Regulation 1803 is valid on SBE and in finding Regulation 1803 was not quasi legislative in nature.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Siggins, J.*


A137173, A137186


* Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                    San Francisco Superior Court

Trial Judge:                                    Hon. James Robertson, II


Attorneys for Plaintiff and Appellant:          Pearson, Simon, Warshaw & Penny LLP
                                                George S. Trevor
                                                William J. Newsom

                                                Holland & Knight LLP
                                                Charles L. Coleman, III
                                                Adanna M. Love

                                                Albin C. Koch

Attorneys for Interveners:                      Trombadore Gonden Law Group LLP
                                                J. Thomas Trombadore
                                                David M. Gonden

                                                Wendel, Rosen, Black & Dean Llp
                                                Leslie A. Hausrath
                                                R. Zachary Wasserman
                                                Thiele R. Dunaway

Attorneys for Defendant and Appellant:          Kamala D. Harris
                                                Attorney General of California
                                                Paul D. Gifford
                                                Senior Assistant Attorney General
                                                Joyce E. Hee
                                                Supervising Deputy Attorney General
                                                Kristian D. Whitten
                                                Deputy Attorney General
                                                Karen Y.Yiu
                                                Deputy Attorney General